Of course, thanks, counsel, for their argument. And we will go to the third case, which is U.S.A. v. Claudia Hernández-Becerra. Good afternoon, Your Honor. May it please the Court, Kara Hartzler on behalf of Ms. Hernández-Becerra. On the day of Ms. Hernández's court, the magistrate judge was told that all 51 defendants who were still in the same clothes they were arrested in had spent the last three days in border patrol stations, where they were held in very cold cells, slept on the floor, had no real meals, and had no access to soap, showers, or any kind of sanitation. The magistrate judge allowed all the defendants to join in everyone else's objections. But the magistrate judge found that these conditions did not affect the defendant's ability to make a knowing and voluntary plea. Where in the record does it say exactly what facility she was actually held in? It does not. So we don't even know from the record which of the various facilities and the different conditions apply to her? It does not. But, Your Honor, I think the evidence specifically, you know, that was given about all the people who were brought that day, as well as all the evidence that's in some of the amicus briefs, displays that the conditions are pretty much across the board all the same. And, Your Honor, I think this goes to the question of what we're looking at here is not necessarily a factual issue. Now, the government says, well, the issue is that Ms. Hernandez never said or never proved what condition she was held under. But the real legal question here, Your Honor, is, was there sufficient indicia in the record to cast doubt on whether Ms. Hernandez's plea was knowing and voluntary? And the answer is yes, because all of these people were brought in, the lawyers across the board objected over and over to these conditions. There was no indication that there was any difference from one station to another. On the question of objections, the attorneys were stating their concerns. Concern sounds a little bit self-virtuous to me. In litigation, we say I object because of this. Now, where is there an objection which tells the court that the conditions were causing these people to not be able to knowingly and voluntarily enter the plea and that their plea should not be taken? So, Your Honor, I think the best objection is at ER-465. And what happens there is one of the attorneys says, streamline is coercive. And this court should do a deeper inquiry into the conditions and it should ask each defendant whether these conditions are actually, you know, contributing to their decision to plead guilty today and whether that's part of their, that's part of the coercive issue. Where is the offer of proof that such statements will show that they are unable to knowingly and voluntarily enter a plea? Well, I think that goes to the legal question, Your Honor, that we have raised about when does, for instance, a condition render someone's plea perhaps not knowingly and voluntarily? Is that what the court is sitting at? Yeah. And I think we pointed out in our briefing five different types of conditions or issues that can affect whether a plea is knowingly and voluntarily. What attorney said these conditions prevent these people from stating voluntarily and knowingly that they're guilty? I'm not sure that, just to be very precise, I'm not sure an attorney ever said these conditions prevent it. That's right. They voice their concerns, their humanitarian feelings. But was there a valid legal objection to proceeding? I believe there was, Your Honor. And I would give you, for instance, this analogy. If I walked into a court and I said, Your Honor, I think that most of the people in here took a psychotropic drug this morning and that psychotropic drug causes hallucinations, I think it would be a good idea for this court to do a further inquiry with each of them. That would be a similar situation. But that wasn't what was said here. I mean, there was a complaint about the conditions, and then the magistrate undertook to ask each one whether they understood whether there was any mental or physical condition, whether there was any medication, whether there was any reason that they didn't understand what they were going through. And all of them said they understood. If the court doesn't agree with me that this is across the board something that should have happened with every defendant, I think at the very least it was something that was a real concern for Ms. Hernandez. The judge came in. He knew that Ms. Hernandez had just turned 18. She had no criminal or immigration history whatsoever. She was terrified. She had been crying throughout her interview with her attorney. She basically had lost her cousin on the journey up. Everything that had to do with Ms. Hernandez, if nothing else, even if you don't agree with it as to the other defendants, everything about Ms. Hernandez suggested that her will was overborn here. But that would be true even if she had been at the Metropolitan Detention Center. All the factors you just described would all be the same, wouldn't they? I don't think so, Your Honor, because, for instance, if you look at some of the reports in the Amici brief, there's a psychologist who did some interviews with people, and he actually asked about their states of mind on the first hearing that they had and then three days later. And a lot of people who he interviewed said, I'm really glad I didn't do a plea that first day, because I didn't know what was going on. The conditions were awful. After three days when I had been in a place with a shower and a bed and three real meals a day, I had my wits about me and I was in a much better position to make those kinds of decisions. So I don't think that this is just a situation where, you know, someone had an uncomfortable couple hours in jail. This was three days in a row where people didn't have their basic human needs being met. And I think one of the things that is really concerning about these conditions is that some of the research shows that 80 percent of people who go through streamlined court come out without knowing that they've been convicted of a crime. 63 percent think that they've been convicted of a crime. And that's not true. 43 percent don't know that they had a lawyer. I think all it suggests is that she had a lawyer who knew that she had nothing to gain by taking the plea off her and who advised her to do it. In terms of the specific facts about her, first, on the record, the judge had to tell her to keep her voice up because she was so soft-spoken. Her attorney at ER 575 to 77 talks about all of the terror that she had gone through. And I think that even if the court decides that, you know, across the board, you know, you're going to have to have a lawyer, you're going to have to have a lawyer, you're going to have to have a lawyer, you're going to have to have a lawyer, you're going to have to have a lawyer, you're going to have to have a lawyer. I think at a minimum, Ms. Hernandez's, the facts in her case show that her will was overborn. The judge, the magistrate did ask a very open-ended question about whether there was anything that would have prevented her from pleading voluntarily. And then there was follow-up with her counsel who basically didn't offer anything further as to, you know, whether she was willing to plead. Ms. Hernandez's specific situation. And so in light of those facts, how was the magistrate judge, what more was he expected to do under that situation? I do want to save some time for rebuttal, but I'll answer your question quickly. All we're asking here is that the magistrate judge could have asked a couple specific questions that were not yes or no questions. So, for instance, when was the last time you slept? When was the last time you ate? Do you understand what you're here to do? Is this an immigration court or a criminal court? If the magistrate judge had done that, it would have taken less than a minute. And that's really all we're asking for here. And with the court's permission, I'll save the remainder of my time. May it please the Court. Benjamin Hawley for the United States. Picking up on that last point, the magistrate judge is not required to be a detective to not take both defendant and their counsel's answers at face value, absent something that would indicate that they're obviously wrong. Here, as Your Honor just noted, the judge asked a very open-ended, very large question, partially because no specifics had been given. The magistrate judge kept asking both Ms. Hernandez's counsel and other counsel throughout the hearing, give me something specific about your client. When they did so, when one attorney did so, then the magistrate judge followed up and actually in that case found that there was enough reason to continue the hearing to avoid any potential problems with voluntariness and understanding. Here, the magistrate judge asked both Ms. Hernandez, is there anything at all that would make it where you can't understand this? She said no. He then turned to the attorney. The attorney's response was just subject to the earlier objection. Again, then the magistrate judge tried to pin that down a little bit more and said, well, the earlier objections had to do with conditions of confinement. None of them really related to competency in this context, meaning knowing and understanding plea. Her counsel said, correct, I have nothing to add with regards to these specific clients. He again followed up. Do you accept the statement they made that they understand what is happening? Counsel said, yes, I don't have any reason to believe they're lying. The magistrate judge did ask additional questions, did follow up, but in the absence of specific facts as to Ms. Hernandez, there's nothing more for the magistrate judge to do. The point of the Rule 11 inquiry is to ensure that the plea is made knowingly and voluntarily. All the facts before the magistrate judge indicated that Ms. Hernandez was making her plea both knowing and voluntarily. What's the standard of review for the case-specific determination of voluntariness that we should apply here? The voluntariness would be reviewed de novo unless there's a lack of objection to the Rule 11 procedure, which is argument here that it's plain error because they were talking about conditions of confinement. But again, there's no objection as to the Rule 11 at the time that the Rule 11 colloquy itself was insufficient. Ultimately, well, of course, the court should get that right. Ultimately, the government's position is it doesn't make a significant difference because under either scenario, you go to a harmlessness inquiry if there was, in fact, error. And here the evidence indicates that Ms. Hernandez wanted to plead guilty, that that's what she desired to do, and that additional questions would not have changed that outcome. She affirmed three times over that she wanted to plead guilty. The magistrate judge asked her and her counsel. She put herself into the proceedings initially in a format to plead guilty and saw others who didn't. It's not that every defendant there was pleading guilty and the magistrate judge was rushing through it. Several asked for trial or at least got a different status hearing to make a different determination. Unless the court has any further questions, we would ask that the conviction be affirmed. Thank you. Let me ask you the same question. What would be the standard of review? On the question of the adequacy of the colloquy, the government contends that it's plain error. What's your response to that? The government conceded that it was harmless error below. At ER 34 to 35, the government specifically said that there was an objection, it was preserved, that it was harmless error, and that the government had the burden to show that. So the government's already waived the plain error issue. I would just also like to make two very brief points relating to what my colleague said. First of all, in terms of asking the lawyers, you know, do you have any other concerns? The magistrate judge specifically said, I am not going to listen to any concerns about whether people are hungry and tired. The magistrate would only listen to concerns about mental incompetence. And that's different. Basically the magistrate judge was saying, I don't believe that not having sleep for a couple days could be an issue for incompetence. I don't think that not having been fed for a couple days goes to incompetence. And we think that that's the real legal error at the crux of this. And then the last point I want to make is that when the court is asking, well, wasn't there, I believe it was Judge Press, you know, wasn't there sort of an open-ended question about is there anything that would keep you from pleading guilty here today? First of all, that is a very broad question. It doesn't go to conditions. It doesn't go to voluntariness. All it asks is do you understand. It doesn't ask are you doing this voluntarily. And even if she had said yes, I think that voluntariness, it sort of has this idea that, you know, you're going to do whatever you have to do to do the plea. And then I also want to just distinguish this court's different decisions in some of the Arizona cases where there was a one-on-one colloquy. In this case, what happened, which was different than the Arizona cases, is that the judge would ask a question, and he asked that broad question, is there anything that would keep you, and then he would go down the line. He would say, Mr. A, yes. And then he would go down the line, and then they're just repeating the answer to the person before them. And so for that reason, we believe that this was not enough to show that there was no involuntary plea. Thank you, Your Honor. All right, thank you very much. The case of the United States of America v. Hernando Becerra is submitted. And we'll go to the next case, and after that, we'll take a 10-minute break. The next case is the United States of America v. Oscar Jesus Chavez Diaz. Good afternoon again, Your Honor. Cara Hartzler, Federal Defenders, on behalf of Mr. Chavez Diaz. In the Southern District of California, defendants charged with 1325 are treated differently than other misdemeanors. They are arrested, detained, shackled, convicted, and served jail time, while other misdemeanors are cited, released, given an alternative disposition, and served no jail time. 1325 defendants are even treated worse than felony defendants, who are brought to court a day earlier and do not meet their attorneys while they're shackled and in the presence of law enforcement. Because this disparate treatment violates equal protection and due process, the court should vacate Mr. Chavez's conviction. So as I just stated, streamlined defendants are treated differently from at least two different groups here. One of them is the defendants that are in the district's misdemeanor court, which are basically people who come in, they're cited, they get something in the notice, a notice in the mail a couple weeks later, they come in, and 99% of those people walk away without ever getting a conviction or serving jail time. 1325 defendants are the only people charged with petty offenses who are treated completely differently. And that's a serious problem. What's the exact relief you want? You want his conviction to be vacated so that he can then replete and go forward? We believe his conviction should be vacated. We did a motion to dismiss, and we believe that his prosecution in that streamlined court violated equal protection. Now, if the government wanted to charge him again, I think it's possible they could do that. They're still within the statutory limitations ground. So that's what we would be seeking, is to have his conviction overturned. But if that's the remedy being sought, why isn't that relief, as the government argues, waived by the plea of guilty? Because class controls. As the district court found below at ER 3 and 21, the district court said Mr. Chavez is basically challenging the constitutionality of his proceedings rather than his factual guilt. And that's exactly what the Supreme Court held last year in class. It said that when you are not, when what your constitutional claim is arguing does not contradict the allegations in the charging document or the admissions that you make at the plea, then it can be challenged in court, because it wouldn't make sense, for instance, to have someone have to go and do a whole trial just to preserve an issue, when they're not contesting the factual guilt or anything else that came out at trial. So it makes practical sense. At a minimum, Your Honor, if the court disagrees and thinks, no, his plea is barred, or I'm sorry, his challenge is barred by this guilty plea, at a minimum, this case has to go back, because the district court actually advised him that he was able to appeal. And specifically, his attorney said, no, you know, we are not waiving our appellate rights. We are not. And so at a minimum, if the court finds that this challenge is barred, then this case still has to go back because he was misadvised about whether he had the right to appeal, and his plea wasn't knowing and voluntary. He was misadvised by whom, his lawyer or the court? The court. Where is that? Let's see, Your Honor. Basically, at 382, his attorney says, Mr. Chavez is not waiving his appellate rights. He is not. I believe it's just one or two pages before that where the court advises him of his appellate rights, says that you have the ability to appeal this, says you have 14 days to do it. So there was nothing in the record. But when Mr. Trimble says Mr. Chavez Diaz is not waiving his appellate rights, there are three different types of appellate rights that we're dealing with here. We're dealing with case-specific rights, that he waives when he pleads guilty. We're dealing with jurisdictional rights, which he doesn't waive. But any constitutional errors or, yeah, errors that occur before he pleads guilty in his case, he waives, doesn't he? No. Other than jurisdiction. No, and I think that's exactly what the Supreme Court decided last year in class. Because in class, the government made a similar argument, as Your Honor is saying, and it said, look, anything that's non-jurisdictional gets waived by a guilty plea. And the Supreme Court said no. Actually, some antecedent constitutional violations are not waived by a guilty plea. And basically it went on to sort of talk about when are they waived and when are they not. And specifically what they said is if the constitutional challenge that you're bringing does not contradict the factual admissions that you made as part of your plea or the allegations against you, then your guilty plea does not waive. In other words, if I can agree that I did the acts that they're saying I did, and that does not defeat my constitutional challenge, then your guilty plea doesn't waive it. They don't say that every claim that doesn't go to the factual elements of guilt is fair game. What they go on to say is that the claim here challenges the government's power to criminalize class's admitted conduct. They thereby call into question the government's power to constitutionally prosecute him. But you're not claiming a power like a double jeopardy claim to be immune from prosecution. You're just saying you don't like the manner of the proceeding. But how do you preserve that if you go ahead and say, all right, I'll plead guilty anyway? Well, we don't think they constitutionally prosecuted him. And I know that class also has some language about could the government hail the person into court or not. What we're saying here, Your Honor, is they couldn't hail him into this court. And because there is this system set up where everyone charged with 1325 is taken into this court, then it was inevitable that he was going to be brought into this unconstitutional court. And that's what we're challenging. And, again, at a minimum, Your Honor, I think one of the reasons why class should apply to the court. Your argument is it's an unconstitutional court not because the court doesn't have jurisdiction, but because some procedure that the court uses prior to the guilty plea is unconstitutional. That's correct. And when he pleads guilty, he weighs it. I don't think so because if that were the case, then a lot of cases would have come out differently. Now, for instance, in Mena and Blackledge and other cases, you have the same situation where it wasn't necessarily something that had to do with the, you know, with whether there was jurisdiction. It wasn't a jurisdictional issue. It was what happened before that keeps the government from being able to prosecute this person. Here they're trying to prosecute everyone in streamlined court, and that was an unconstitutional prosecution that they couldn't do, and that's why he can still appeal this. But, again, I would fall back, Your Honor, on the idea that, at a minimum, if the court disagrees, then he did not knowingly and voluntarily waive his right to appeal, and the court should remand for that. If the court has no further questions, I'll save the remainder of my time. May it please the Court. Benjamin Hawley again for the United States. I agree with counsel that class controls, and it's the primary case on the waiver issue here, but we just simply read class differently. Class told us it extended the precedent of Blackledge and Minna and Brose and said that a valid guilty plea renders irrelevant and thereby prevents the appeal, the constitutionality of case-related government conduct from before when the plea was entered. The only exceptions to that are double jeopardy, for example, in Minna, vindictive prosecution in Blackledge, or here a facial constitutional attack, as in class, where the bringing of the charge itself was the problem. Here, in contrast, as Ms. Hartzler has already said, the government could charge him legally in the first instance, and in fact has said we could charge him again if this were to go back. That indicates, then, that the problem is not with the bringing of the charge. It's not jurisdictional in this class sense. Instead, it has to do with the procedure, and that's where the Supreme Court has made clear that the guilty plea is a break in the process. But let me see how far you think that principle goes with the admittedly extreme hypotheticals. Suppose a court adopts a system where it says, for this crime, defendants of this race are going to go to the first floor, where it's a very comfortable court, it's very nice, they're going to have all these nice procedures, et cetera, and those of another race are going to go to the seventh floor, and there it's a hellhole. It's uncomfortable, it's dark, it's 45 degrees in the room, and it's a horror show. And a defendant comes in, I want to plead guilty, I just want to get it over with, but I've got to go to the seventh floor because of my race. If he goes forward and pleads anyway, does he really have no claim? He can't contest that I shouldn't have this two-track system? I think so under the reading of class because of the guilty plea. So, of course, the distinction is that that system is challengeable, obviously. I mean, when your objection is to invidious discrimination in the process itself, which is wholly apart from the question of guilt, and the whole point is I want to plead guilty, but my guilty plea is being processed through an invalid invidious distinction, that's given up by pleading guilty? So defendants would still retain, for example, any errors in the Rule 11 process. So to the extent those conditions caused problems in the Rule 11 colloquy, knowing a voluntary plea, understanding the things we talked about in Ms. Hernandez's case, then that could come up on appeal. Or, again, the defendant could choose not to plead guilty and challenge the process in any number of other ways. The problem is doing this unconditional guilty plea. They could go to trial, even a stipulated facts trial, potentially do a conditional guilty plea. There are many other options. But having pled guilty and, in this case, received a time-served offer or sentence, the defendant should not then appeal what happened before that guilty plea unless it goes to the validity of the plea itself. As to counsel's argument that, well, at the very least, then this should go back because the appellate waiver was unknowing, I would disagree. The court here said that the defendant, Mr. Chavez, had a right to appeal, and that's true as to certain issues. If, for example, he had argued that this was a vindictive prosecution or double jeopardy or the other issues that are jurisdictional, he could have appealed. We're not arguing that he has no right to appeal, just he waived his right to appeal this particular issue. Is a vindictive prosecution jurisdictional? In the sense that class has determined that, yes, not in the how we would normally use jurisdictional. And I think class talks a little bit about that, or certainly Justice Alito in his dissent talks a little bit about. We're kind of expanding the definition of jurisdictional, but within this line of cases, that's how they're using it, in Blackledge and Mena, Gross, and then on in class. So the point is that the appeal remains, that he was not misadvised. He could appeal on certain issues, just not on any of these, as class said, case-related government conduct that takes place before the plea is entered. And then just briefly on equal protection and the due process arguments, the only way this Court gets to the equal protection arguments is if it finds both that there was a suspect class that was discriminated against and that that suspect class is a suspect in this context. Here, the Court is not based on alienage. It's based on the charge. Because there's a large number of the same type of charge, 1325s. No one can be convicted of 1325 if he's an American citizen. Correct. Correct. So is an alienage an element? It's certainly an element of the crime, yes. But it is not, we're not putting all, the Court, rather, was not putting all aliens in this separate calendar. So 1326 defendants, alien smuggling, aliens in possession of a firearm, there are any number of aliens in other courts. So kind of in a Venn diagram sense, all 1325s are aliens, but not all aliens are in 1325 in that docket. So it's charge-based, not alienage-based. So we don't have a suspect class to even get into the equal protection argument. And even if we did, you still only need a rational basis, as we talked about in our brief. The immigration laws necessarily discriminate, or at least differentiate, based on alienage. And criminal immigration laws necessarily differentiate based on whether one is an alien or not. And then finally, as to due process, nothing about this, the way the Court has set up this docket, shocks the conscience. These defendants have full rights, full plaintiff's leave rights. They had counsel, went through the full Rule 11 process of appeal to the district court, and then on to this court. So again, nothing about that process shocks the conscience. This was a separate docket, a separate calendar, not a separate court. And for that reason, unless the Court has any further questions, we would ask that you affirm. Thank you. To go to the issue of whether this is under scrutiny or rational basis, I think Your Honor is exactly right. Alienage is an element of 1325. And there are millions of aliens who are not undocumented, and yet this statute is basically, it says alienage. Now there is, for instance, this Court issued a published decision this morning about a statute that has to do with the bribery of a public official. Now, if this Court, for instance, or say a district court, said, all right, we're going to take every public official, everyone who's convicted under this statute, and we're going to take them up to the seventh floor, and we're going to treat them completely differently. But don't worry. It's not about, you know, whether they're a public official. It's about the charge. You can't separate those two. They're inextricable. Alienage and the charge here are one and the same. What about the point made by your learned friend that some aliens, especially 1326 defendants, are treated differently? Well, 1326 is a felony, and those people are treated the same as other people charged with the felony. And it's basically an equal protection claim is not defeated merely on the fact that certain members of a protected class are not subject to discrimination while others are. But what you're saying is that if any misdemeanor, if persons who are charged with misdemeanors are not put in jail and are allowed to walk out, that same treatment should happen with the 1325 defendants? What I'm saying, and I apologize if I'm not understanding your question, what I'm saying is that we don't have to show that all aliens are treated a certain way before we can allege a due process violation. So, for instance, let's say that we had women in the armed forces who weren't allowed to fly planes, but they were allowed to fly planes in the Navy but not in the Army. Well, the fact that they could do it in the Navy but not in the Army doesn't mean that in the Army there's not an equal protection problem. In other words, just because there's a subset of the class that's protected that is not discriminated against doesn't mean that when that discrimination occurs against a different subset that there's not an equal protection problem. Another, for instance, another analogy that I would give to Your Honor is, because I can tell you're a little quizzical about what I'm saying. I'm trying to figure out who is not an alien can be prosecuted under 1325. No one. That's right. But the thing is that when you look at who is convicted, who is prosecuted for every other single crime that is of that level of severity, every other person prosecuted of a petty offense in the Southern District of California is treated totally differently. And that's a problem. It is, I think, akin to the example that you are giving, Your Honor, because we're basically saying that if you are charged under this statute of which alienage is an element, we are going to put you through an entirely different process in which you are in these horrible conditions. You are detained. You are convicted. You serve jail time. But if you are charged with any other offense in the Southern District of the same or even greater severity, you will not go through that same kind of thing. You will come out of this without a conviction, without jail time. That shocks the conscience. That shocks me. So I just want to point out that I think that this is under strict scrutiny. And the other thing I would point out is if this were only about alienage, then you couldn't actually, for instance, what the government is saying is that, you know, it's all about alienage. But the problem is or I'm sorry, I'm getting a little ahead of myself. But one of the arguments the government has said is that it's really not about alienage. It's about whether the person is undocumented. Here's the problem with that. LPRs and people who have lawful immigration status in the United States have been and can be convicted of 1325. So it's not about whether you're documented or not. It's about alienage, which is an element. And I think that unless the court has any further questions, I will submit. Thank you. All right. Thank you very much for your argument. And the case of United States of America versus Chavez Diaz will be submitted. And we will take a 10 minute break at this time.
judges: Bea, Collins, Bress